IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 05-252-01 |
| | : | |
| v. | : | District Judge Ricardo M. Urbina |
| | : | |
| Youssef Mahir, | : | Sentencing Date: December 5, 2005 |
| | : | |
| Defendant. | : | VIOLATION: |
| | : | |
| | : | 18 U.S.C. §§ 1341 and 1346 |
| | : | (Mail Fraud) |
| | : | |

**GOVERNMENT'S  MEMORANDUM IN AID OF SENTENCING**

The United States Attorney, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in Aid of Sentencing the defendant, **YOUSSEF MAHIR** (hereafter, "the defendant" or "Mr. Mahir"), in the above case.   This memorandum sets forth those factors that, in our assessment, this Court should consider in imposing its sentence.  The Government recommends that Mr. Mahir be sentenced to time served, a sentence within the applicable United States Sentencing Guideline (U.S.S.G.), followed by a period of supervised release and the imposition of a fine.  It is a sentence that considers the objectives of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**Procedural Posture**

1.  On July 20, 2004, Mr. Mahir was arrested pursuant to a criminal complaint charging him with one count of Mail Fraud in violation of Title 18, United States Code,  Sections 1341 and1346.  On that same date he was presented before a Magistrate Judge and was, without objection from the government,  released on his personal recognizance with a requirement to

contact the Pretrial Services Agency weekly by telephone. He was also to remain in the D.C. metropolitan area, surrender his passport, and submit to drug evaluation. Mr. Mahir remains in compliance with these conditions.

2. On July 5, 2005, a one count Information was filed against Mr. Mahir in the United States District Court for the District of Columbia. The Information charged the defendant with violating Title 18, United States Code, Sections 1341 and 1346, Mail Fraud, a Class B Felony under 18 U.S.C. § 3559.

3. On August 22, 2005, Mr. Mahir pled guilty to the one count Information pursuant to a written plea agreement with the government. The defendant understood the penalties associated with this federal charge. 18 U.S.C. § 1341 provides that the offense is punishable by up to 30 years imprisonment. Under 18 U.S.C. § 3571(b)(3), the offense is also punishable by a fine up to $1,000,000 and a term of supervised release not to exceed five years pursuant to 18 U.S.C. § 3583(b)(1). In addition, under the terms of the plea agreement, the defendant agreed to pay a special assessment of $100 to the Clerk of the United States District Court. See 18 U.S.C. § 3013. Under the terms of the plea agreement the parties agreed not to seek a sentence outside the applicable United States Sentencing Guideline range. The agreement also clearly represents defendant's understanding that the Court is not bound in any way by the parties' agreement to recommend a sentence within that range.

## Criminal Conduct

During the period of September 2001 through October 2002, the defendant was an Account Service Representative for the Center for International Business and Travel ("CIBT"). CIBT is a travel agency business contracting services for the World Bank. CIBT obtains visas and

other travel documentation on behalf of the World Bank and its officials. Such documentation is vital to the work of the World Bank.

The World Bank, formally titled the International Bank for Reconstruction and Development, is a United Nations agency that raises capital for, and makes loans for, development projects in lesser developed nations. The World Bank is headquartered at xxxx x xxxxx xxx, Washington, D.C. Its employees enjoy a form of "diplomatic immunity" from criminal and civil legal process while acting on behalf of the agency. Thus travel documents and visas issued on the basis that they will be used for official World Bank business provide a traveler with lesser scrutiny in international travel.

Mr. Mahir, while working for CIBT on behalf of the World Bank, was responsible for obtaining visas and international travel documents for World Bank officials. In that capacity, Mr. Mahir owed CIBT and the World Bank his honest services.

On December 9, 2003, Special Agent Denise Montgomery of the United State Department of State, Diplomatic Security Service, went to the World Bank in the District of Columbia. Agent Montgomery visited the World Bank based on information she had received that an employee of CIBT had submitted letters to the embassies of Germany, France and the Consulate of the United Kingdom requesting visas for Witness 1 (W-1) and representing W-1 as a World Bank employee who would be traveling on official business. CIBT obtains visas for World Bank employees and their dependents only for official travel on behalf of the World Bank. The investigation revealed that W-1 is not and never was an employee of or consulate for the World Bank.

During the course of her investigation, Agent Montgomery learned from W-1 that he was planning to go to Morocco in 2001 for personal reasons. For this trip, he needed to obtain a visa

from the Embassy of Germany. W-1 contacted the defendant and told him that he needed to get the visa quickly. The defendant offered to use his position at CIBT to obtain the necessary visa for W-1. The defendant told W-1 to mail W-1's passport, a copy of his Resident Alien card, and two photographs to the defendant at the World Bank. The defendant drafted a World Bank cover letter and visa application and sent the documents through a courier to the Embassy of Germany in Washington, D.C. In the cover letter, the defendant represented that W-1 was a World Bank consultant and would be traveling on official business for the World Bank. The defendant obtained a multiple-entry visa from the Embassy of Germany on September 25, 2001 and mailed it to W-1 in Texas through the U.S. Postal Service.

   In August 2002, W-1 again contacted the defendant and stated that he wanted to go to Morocco for personal reasons and needed a visa from the Embassy of France. The defendant offered to use his position at CIBT to obtain the necessary visa for W-1. Once again, the defendant told W-1 to mail W-1's passport, a copy of his Resident Alien card, and two photographs to the defendant at the World Bank. The defendant drafted a World Bank cover letter and visa application and sent the documents through a courier to the Embassy of France in Washington, D.C. In the cover letter, the defendant represented that W-1 was a World Bank consultant and would be traveling on official business for the World Bank. The defendant obtained a multiple-entry visa from the Embassy of France on September 3, 2002.

   In October 2002, W-1 again contacted the defendant and stated that he wanted to go to Morocco for personal reasons but wanted to travel through England on a cheaper flight and needed a visa from the United Kingdom. The defendant offered to use his position at CIBT to obtain the necessary visa for W-1. Again, the defendant told W-1 to mail W-1's passport, a copy

of his Resident Alien card, and two photographs to the defendant at the World Bank. The defendant drafted a World Bank cover letter and visa application and sent the documents via Federal Express from the World Bank to the Consulate of the United Kingdom in New York. In the cover letter, the defendant represented that W-1 was a World Bank consultant and would be traveling on official business for the World Bank. The defendant obtained a multiple-entry visa from the Consulate of the United Kingdom via return Federal Express mail on October 25, 2002. The defendant then mailed W-1's passport with the valid visa to W-1 in Texas through the U.S. Postal Service.

## Recommended Sentence

As a threshold matter, the Government understands that the application of the United States Sentencing Guidelines is not mandatory. However, in <u>United States v. Booker</u>, the United States Supreme Court made clear that, in determining the appropriate sentence for a defendant, federal courts should calculate and consider the applicable guideline range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities. _____ U.S. ____; 125 S. Ct. 738, 757 (2005). Accordingly, in determining an appropriate sentence for Mr. Mahir, the government requests that the Court consider the U.S.S.G. as well as the sentencing objectives stated in the United States Code in order for the sentence to: (1) reflect the severity of the offense (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with the needed educational or vocational training and medical care. <u>Id.</u>; <u>see also</u> 18 U.S.C. § 3553(a)(2).

Mr. Mahir pled guilty to violating 18 U.S.C. §§ 1341 and 1346, Mail Fraud. The statutory

maximum period of incarceration is 30 years. The applicable guideline range for this offense is set forth in U.S.S.G. § 2B1.1(a)(1). Under this section of the 2001 U.S.S.G, the defendant's base offense level is a 6.[1] The defendant is subject to a 2 point increase in his offense level under § 3B1.3 because he abused a position of trust in committing his crime. The defendant is also eligible, however, for a 2 point reduction in his offense level for acceptance of responsibility under § 3E1.1(a). The defendant's adjusted offense level, therefore, remains a 6. Mr. Mahir does not have any prior convictions, leaving him with a criminal history category of I. This criminal history category places him in Zone A of the Sentencing Table. Accordingly, the guideline range applicable to Mr. Mahir is a term of imprisonment of 0 months to 6 months. Additionally, a special assessment of $100 is mandatory, and the Court may impose an additional fine in the range of $500 to $1,000,000 pursuant to U.S.S.G. § 5E1.2(c)(1).

Mr. Mahir was born and raised in Morocco. According to the Presentence Investigation Report, he graduated college while still in Morocco. Mr. Mahir first entered the United States in May 1998, at the age of 33. His intent was to remain in the United States for work. He applied for a green card in 1997, and is currently a legal permanent resident. Mr. Mahir was married in 1997 in Morocco. His wife moved with him to the United States, where they had one son in 2000. The couple separated in 2001 and divorced in 2002. Mr. Mahir's wife and son currently reside in Falls Church, Virginia. Mr. Mahir's parents and three brothers remain in Morocco.

---

[1] The plea agreement entered into by both parties calculated the defendant's offense level as a 7 based upon the 2004 U.S.S.G. The offenses in this case were committed during the time that the 2001 U.S.S.G. were in effect. The base offense level for the charge at that time was a 6. The 1 point difference articulated in the plea agreement compared to the applicable guideline range does not effect the ultimate sentencing range in this case which is 0-6 months based upon the defendant's criminal history category.

CIBT terminated the defendant in 2004. Since that time, he has been employed as a guest services coordinator at the Hilton Arlington & Towers. Mr. Mahir also began attending real estate classes in 2005. Mr. Mahir reports that he does not drink and has never used any illicit substances.

Mr. Mahir's offense of Mail Fraud is a Class B Felony, and as such the defendant is not eligible for probation under 18 U.S.C. § 3561. The government does not believe that a sentence without a significant penalty is appropriate in this case.

Mr. Mahir was offered and accepted, a generous plea agreement in which the government agreed that Sentencing Guideline Section 2B1.1 would govern the Mr. Mahir's sentence. Mr. Mahir was willing and did provide information to the government but was, due to circumstances outside of his control, unable to contribute significantly to that effort. The government considers his offer in making its sentencing recommendation to the Court. Pursuant to U.S.S.G. 2B1.1, Mr. Mahir is eligible to serve a term of imprisonment of 0 months to 6 months. The government respectfully requests that the Court sentence Mr. Mahir to time-served while in detention, followed by a period of supervised release and the payment of a fine.

Mr. Mahir abused his position to help a friend knowing that he was violating the law. He committed the crime at the expense of his employer. Mr. Mahir has been able to remain in the community and has found new employment Mr. Mahir has accepted responsibility for violating the U.S. Criminal Code, however, the government believes and recommends that he be penalized for his actions in a way that will promote respect for the law, afford adequate deterrence, provide just punishment. CIBT and the World Bank did not take an accounting of specific financial loss

that occurred as a result of the defendant's criminal behavior. But their accounting is not a prerequisite to the imposition of a fine. CIBT's Victim Impact Statement (Attachment A) represents that its "legacy value is built on relationships and integrity." In abusing his position of trust Mr. Mahir placed CIBT at risk for losing the trust and good-will of its resources and its clients at the Bank. For example, as a result of Mr. Mahir's actions the German Embassy now refuses to allow CIBT to process visas on behalf of World Bank employees and contractors unless the traveler does so in person. As a consequence, if an employee or contractor at the Bank needs to go to Germany while they are traveling outside of the United States, they must return to the United States and apply for their VISA at the embassy site. That change in protocol has severely impacted travelers and has created added expenditures for the Bank by requiring flights to the United States that could have been avoided if the embassy processed the VISA requests submitted by CIBT on behalf of the Bank's travelers who are abroad. In addition, several other embassies have instituted more stringent processing requirements. Given the sheer volume of requests handled by CIBT, the additional requirements place a burden on company resources. Furthermore, the company has for the first time been forced to increase security in both its operating system and in its hiring process as a direct result of the defendant's abuse of his position of trust.

The applicable guideline, § 5E1.2(c)(1), allows for a fine in the range of $500 to $1,000,000. In determining the fine amount, the court should consider the seriousness of the defendant's offense. Furthermore, the government's Receipt and Acknowledgment of the Presentence Investigation Report notes that Mr. Mahir's child support payments are self-reported as $300.00 and not $700.00 (Presentence Investigation Report, page 7). Furthermore, Mr. Mahir

has recently moved into a friend's house and is paying no rent. Although the imposition of a fine would be burdensome on Mr. Mahir, it would not be unduly burdensome. It would remind Mr. Mahir that criminal actions have consequences. The court may also consider the expected cost to the government of any component of the sentence. The Administrative Office of the United States Courts suggests the court use a monthly cost of $287.73 for supervised release. In consideration of these factors, the government recommends that Mr. Mahir be fined in the amount of $487.73 per each month of supervised release. This figure allows the court to recover the cost of supervision, and penalizes the defendant by imposing a fine amount of $200.00 each month. By allowing the defendant to pay his fine over the course of several months, the court will not put an undue burden on the defendant which would prevent him from meeting his other financial obligations.

### Conclusion

It is the government's position that a sentence of imprisonment to time served, followed by a period of supervised release and the imposition of a fine would further the objectives set forth in 18 U.S.C. §3553(a)(2). The government's failure to recommend that Mr. Mahir serve additional time incarcerated should not be a signal to the Court that the crime that he committed is not, in our view, a serious one - the statutory penalty of 30 years signals the severity of the crime. Rather, it is the government's position that Mr. Mahir will be deterred from committing further crimes without serving additional time in jail if he is obligated to pay a monthly fine and the cost of supervised release for a reasonable period of time. It is the government's hope that Mr. Mahir

will understand that he can pay back a portion of what was taken from the community and, at the same time, be given the opportunity to do so while in the community.

          Respectfully submitted,

          KENNETH L. WAINSTEIN
          United States Attorney
          D.C. Bar #451-058

          _____

          HEIDI M. PASICHOW
          Assistant U.S. Attorney
          D.C. Bar # 370-686
          United States Attorney's Office
          555 4th Street, N.W.
          Washington, D.C. 20530
          Heidi.Pasichow@usdoj.gov
          202-514-7533

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY, that a copy of the foregoing document has been electronically filed and provided to counsel for defendant, David W. Bos, Esq., 625 Indiana Avenue, NW, Suite 550, Washington, DC 20004, on this 2nd day of November, 2005.

          _____

          HEIDI M. PASICHOW
          Assistant U.S. Attorney